UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————x

RAMI SHAMIR,

        Plaintiff,

    -against-

THE CITY OF NEW YORK, New York City Police
Department Lieutenant ROBERT MURRAY and New
York City Police Department Officer (P.O.) John DOE in
their individual capacities,

        Defendant.

————————————————————————————x

No. 13 Civ. 5652 (CM) (AJP)

## MEMORANDUM DECISION AND ORDER CONVERTING MOTION TO DISMISS CLAIMS INTO A MOTION FOR SUMMARY JUDGMENT, AND DEFERRING RULING ON THE MOTION

McMahon, J.:

On August 13, 2013, Plaintiff Rami Shamir brought civil rights claims against the City of

New York, New York City Police Department Lieutenant Robert Murray, and Officer John Doe.

Plaintiff asserts claims under the First, Fourth, Fifth, and Fourteenth Amendments of the

Constitution of the United States through 42 U.S.C. § 1983. Plaintiff also asserted, but has since

withdrawn, a *Monell* claim against the City of New York. Plaintiff asserts pendent claims under

New York statutory and common law for assault and battery, false arrest, false imprisonment,

abuse of process, and negligence.

On December 20, 2013, Defendant moved to dismiss Plaintiff's claims under Fed. R. Civ.

P. 12(b)(6). Defendant claims that Plaintiff has failed to meet the pleading requirements set forth

in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

For the reasons set forth below, the Court converts the motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) and defers decision on that motion pending response from Plaintiff.

## BACKGROUND

The following allegations are drawn from the Complaint. They are presumed true and are presented in the light most favorable to the Plaintiff.

On the afternoon of September 15, 2012, Plaintiff attended events related to the Occupy Wall Street protests. (Compl. at ¶ 15). New York Police Department officers ("N.Y.P.D") issued an order to disperse. (Compl. at ¶ 17). Plaintiff claims that he began to comply with the order to disperse, and that N.Y.P.D. officers began arresting individuals who were not complying with the officer's orders. (Compl. ¶¶ 18-19). Plaintiff then called an N.Y.P.D. officer a "thug" and was arrested, Plaintiff claims, in retaliation. (Compl. at ¶¶ 20-21).

Police Officer Doe placed Plaintiff in zip-tie handcuffs, which Plaintiff alleges were tightened excessively and not loosened despite his repeated requests throughout his detention. (Compl. at ¶¶ 22-24). Plaintiff claims that the handcuffs caused injury to his wrists. (Compl. at ¶ 22).

Plaintiff was arraigned more than 24 hours after his arrest and, after a number of court appearances, was dismissed pursuant to an adjournment in contemplation of dismissal under N.Y. Crim. Pro. L. § 170.55. (Compl. at ¶¶ 25-26).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on August 13, 2013. On December 20, 2013, Defendant filed a Motion to Dismiss, together with a declaration by Andrew Lucas, Assistant Corporation Counsel for the City of New York. Lucas' declaration included a copy of Plaintiff's complaint

and a transcript of Plaintiff's testimony at a hearing held on June 6, 2013 pursuant to New York

General Municipal Law § 50-h ("50-h testimony"). (Lucas Decl. Ex. A, Ex. B). On February 7,

2014, Plaintiff withdrew his *Monell* allegations in his memorandum of law in opposition to

Defendant's motion to dismiss. (Rankin Decl.).

**DISCUSSION**

**I.      Standard of Review**

   **a.   Motion to Dismiss**

   In deciding a motion to dismiss under Rule 12(b)(6), the Court must liberally construe all

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences

in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003);

*see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007).

   However, to survive a motion to dismiss, "a complaint must contain sufficient factual

matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations

omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the

line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570;

*Iqbal*, 556 U.S. at 680.

3

## b. Conversion of Motions and Governing Standards

Although Defendants have moved to dismiss under Rule 12(b)(6), because the Defendant relies upon the 50-h testimony, material outside of the four corners of the Complaint, the Court will convert their motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). According to Rule 12, "If, on a motion under Rule 12(b)(6) [ ], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The 50-h transcript speaks directly to Plaintiff's civil rights and common law claims. (Lucas Decl. Ex. B). Accordingly, defendants' motion to dismiss these claims will be converted. *Cf. In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir. 1985) (explaining that conversion is appropriate where non-moving party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment"); *Zynger v. Dep't Homeland Sec.,* 615 F. Supp. 2d 50, 59 n. 9 (E.D.N.Y. 2009) ("Where a party has submitted evidence outside the complaint, that factor weighs in favor of that party having had sufficient notice that a motion to dismiss might be converted into a motion for summary judgment"), *aff'd,* 370 Fed. Appx. 253 (2d Cir. 2010).

In similar cases alleging constitutional violations by city officers and employees, courts have concluded that conversion is required when defendants rely on 50-h testimony when making a motion to dismiss. Some courts have allowed consideration of 50-h testimony when "the plaintiff relied on the transcript of his own testimony, rather than his independent recollection of the events, in drafting the pleading." *Aguilera v. Cnty. of Nassau,* 425 F. Supp. 2d

320, 322–23 (E.D.N.Y. 2006). However, when that is not apparent, courts often prefer the City to move for summary judgment – and convert the motion when they do not. *See, e.g., Willing,* 2010 WL 2736941, at *3 (E.D.N.Y. July 8, 2010) (holding that 50–h testimony is proper for a summary judgment motion, not a 12(b)(6) motion); *Hazan v. City of New York,* 98 Civ. 1716 (LAP), 1999 WL 493352, at *7 (S.D.N.Y. July 12, 1999) (finding that a review of the hearing transcript "in and of itself seems an exercise that is better suited for a motion for summary judgment").

Defendants cite *Dellate v. Great Neck Union Free Sch. Dist.* CV 09–2567 (AKT), 2010 WL 3924863, at *4 (E.D.N.Y. Sept. 30 2010), *aff'd,* 448 F. App'x 164 (2d Cir. 2012) in support of their argument that the Court may consider Plaintiff's 50–h testimony as part of a Rule 12(b)(6) motion. However, in the *Dellate* case, *both* parties relied on the 50–h testimony to support their arguments. Here, only Defendants rely on the 50–h testimony.

## II.    Upon Conversion, Decision is Deferred So that Plaintiff Can Submit Additional Evidence

When a motion is converted, it is required that the court to give the non-moving party an opportunity to submit evidence that might create a genuine issue of fact. Fed. R. Civ. P. 12(d). I am offering plaintiff that opportunity; however, he needs to understand that he faces an uphill battle in his quest to keep his lawsuit alive.

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its]

5

favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.,* 870 F.2d 57, 60 (2d Cir. 1989).

The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998).

Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson,* 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

Defendants present two arguments in favor of dismissal: (1) there was probable cause for his arrest; (2) even if there was not, qualified immunity protects the officers from suit. (Def. Memo at 4-10, 14-15). In light of Plaintiff's 50-h testimony, both arguments appear to have merit.

**Probable Cause**

To establish a claim for false arrest and/or false imprisonment a plaintiff must prove, inter alia, that his confinement was not otherwise privileged. *Singer v. Fulton County Sheriff,* 63 F.3d 110 at 118 (2d Cir. 1995); *Bernard v. U.S.,* 25 F.3d 98 at 102 (2d Cir. 1994); *Broughton v.*

*State,* 37 N.Y.2d 451, 456 (1975). If the arresting officer has probable cause, the confinement is otherwise privileged, and "the individual has no constitutional or statutory claim against the officer who made the arrest." *Decker v. Campus,* 981 F. Supp. 851, 856 (S.D.N.Y. 1997).

Probable cause exists where facts and circumstances within the officer's knowledge, or absent of which he had reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that the person under inquiry has committed an offense. *Brinegar v. United States,* 338 U.S. 160, 175–76 (1949); *Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir. 2001). The validity of an arrest does not depend upon an ultimate finding of guilt. *Pierson v. Ray,* 386 U.S. 547, 555 (1967); *Fernandez v. DeLeno,* 71 F. Supp. 2d 224, 229 (S.D.N.Y. 1999). Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information. *Bernard,* 25 F.3d at 102 (citing *Colon v. City of New York,* 60 N.Y.2d 78 (1983)). Even if the basis for the arrest dissipated subsequent to the arrest, it does not eliminate the probable cause that existed at the time of the arrest. *Dukes v. City of New York,* 879 F. Supp. 335, 341 (S.D.N.Y. 1995).

Whether the probable cause standard has been met in a particular case is determined by reference to the "totality of the circumstances." *Bernard,* 25 F.3d at 102 *(quoting Illinois v. Gates,* 462 U.S. 213, 231 (1983).

Plaintiff was arrested and charged with unlawful camping in violation of 56 RCNY § 1-04(p), which states "no person shall engage in camping, or erect or maintain a tent, shelter, or camp in any park without a permit," and with "littering, polluting, dumping, and [leaving] unattended property . . . within or adjacent to a park" in violation of 56 RCNY §§1-04 (c)(4) and 104(o). Under the Charter of the City of New York, Chapter 21, § 533 (a)(5) park rules and

7

regulations are enforceable within three hundred and fifty feet from the boundaries of any park—
By his own admission, Plaintiff was within that distance. (50-h testimony at 24-25, 46).

In the 50-h testimony, Plaintiff testifies that he laid out his sleeping bag and sat on it with
the intention of going to sleep. (*Id.* at 27, 41-42, 43). When the police ordered him to leave the
park, Plaintiff testifies that he stood up, put his sleeping bag on a nearby bench, and approached
a police officer whom he called a "thug." (*Id.* at 51-55). Plaintiff was then arrested. (*Id.* at 57-
58). These facts as testified to by Plaintiff himself suggest that the officer had probable cause to
arrest Plaintiff for violating park rules.

Plaintiff claims that there was no probable cause to arrest him because he was engaged in
"sleepful protest," (*Id.* at 27), based on my esteemed colleague Judge Wood's decision in
*Metropolitan Council v. Safir*, 99 F. Supp. 2d 438 (S.D.N.Y. 2000). In that case, the Court
granted a preliminary injunction to prevent the city from arresting protestors for sleeping on the
sidewalk outside of the Mayor of New York's residence as part of a vigil to represent
homelessness over proposed rent increases. Organizers of the vigil in *Safir* had recruited
marshals to oversee the protest and ensured police protection for the protestors and to prevent
blockage of the sidewalk to pedestrian use. *Id.* at 441. Judge Wood's injunction prohibited
arrests in connection with a "planned vigil on the sidewalk abutting the northwestern corner of
the intersection of East End Avenue and 88th Street between the hours of 1 a.m. and 8 a.m. on
June 14, 2000." *Id.* at 450. Judge Wood held that case did "not involve, nor [did] the Court
express any opinion concerning, the broader question of whether the City may prohibit lying and
sleeping on public sidewalks when that conduct is not an integral part of a large, planned,
publicized protest and is not accompanied by incidents of speech such as signs and literature
explaining the protest." 99 F. Supp. 2d at 444. She cited *Clark v. Community for Creative Non–*

8

*Violence,* 468 U.S. 288, 294 (1984), in which the Supreme Court held that symbolic expression through conduct is protected by the First Amendment when "in context, [it] would reasonably be understood by the viewer to be communicative."

Here Plaintiff, unlike the plaintiff in *Safir*, was not engaging in conduct that would reasonably be understood by a viewer to be communicative. Instead, by his own admission, Plaintiff was looking for a place to sleep so he would not miss the first anniversary of the Occupy Wall Street protests. (50-h testimony at 34, 39, 41, 65). Although plaintiff testified that he believes any type of occupation of public or private space is a form of protest (50-h testimony at 27, 31), this generalized belief does not bring him within either the Supreme Court's decision in *Clark* (which depends for its force on what the viewer reasonably believes, not what the person in Plaintiff's position believes) or the limited decision issued by Judge Wood -- not in the post-arrest context, as is the case here, but prospectively, and based on the well organized and clearly expressive nature of the proposed vigil.

### Qualified Immunity

The City's second argument is that qualified immunity protects the arresting officers.

The doctrine of qualified immunity shields a government employee acting in his/her official capacity from suits for damages under 42 U.S.C. § 1983, insofar as his/her conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Martinez v. Simonetti,* 202 F.3d 625, 633–34 (2d Cir. 2000); *Posr v. Doherty,* 944 F.2d 91, 95 (2d Cir. 1991). Furthermore, a police officer is entitled to qualified immunity if it was "objectively reasonable" for the officer to believe that no rights were being violated by his conduct. *Provost v. The City of*

*Newburgh,* 262 F.3d 146, 160 (2d Cir. 2001). The Supreme Court has recently defined what it

means for a law to be "clearly established" in the context of a qualified immunity defense:

> Clearly established' for purposes of qualified immunity means that 'the contours
> of the right must be sufficiently clear that a reasonable official would understand
> that what he is doing violates that right. This is not to say that an official action is
> protected by qualified immunity unless the very action in question has previously
> been held unlawful, but it is to say that in light of pre-existing law the
> unlawfulness must be apparent.

> *Wilson v. Layne,* 526 U.S. 603, 614–15 (1999) (*citing Anderson v. Creighton,* 483 U.S.

635 (1987)). As the *Wilson* Court explained:

> It could plausibly be asserted that any violation of the Fourth Amendment is
> 'clearly established,' since it is clearly established that the protections of the
> Fourth Amendment apply to the actions of police . . . However, as we explained
> in *Anderson,* the right allegedly violated must be defined at the appropriate level
> of specificity before a court can determine if it was clearly established.

> *Id.* at 615 (citations omitted).

A right is "clearly established" if the contours of the right are sufficiently clear in the

context of the alleged violation. *Johnson v. Newburgh Enlarged School District,* 239 F.3d 246,

250 (2d Cir. 2001). Only a decision of an appellate court – the Supreme Court or, if there be

none, a Court of Appeals in the Circuit in which the lawsuit arose –  can "clearly establish" a

right. *McEvoy v. Spencer*, 124 F.3d 92, 97 (2d. Cir. 1997).

The asserted right that was allegedly violated must be articulated in relation to the factual

situation at hand. In ascertaining whether the right was "clearly established" with respect to a

given situation, a court must consider "not what a lawyer would learn or intuit from researching

case law, but what a reasonable person in [the government actor's] position should know" about

the appropriateness of his conduct under federal law. *Id., citing Young v. County of Fulton,* 160

F.3d 899, 903 (2d Cir. 1998).

As to the first prong of this immunity analysis, the violation of clearly established law "must be apparent," that is, that reasonable police officers in defendant's position would have known that the conduct was unlawful based upon existing law. *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir. 2001)(*quoting Anderson,* 483 U.S. at 640 (1987)). On a motion for summary judgment, the issue is whether a reasonable police officer would have known that what he was doing was clearly illegal based upon the facts before him. *Act/UP!/Portland v. Bagley,* 988 F.2d 868 (9th Cir. 1993).

The second prong of the qualified immunity analysis requires a finding that the officers' conduct was "objectively reasonable" under the circumstances. As noted by the Second Circuit, "we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness of their chosen course of action given the circumstances confronting them at the scene." *Martinez,* 202 F.3d at 634 (*quoting Lennon v. Miller,* 66 F.3d 416, 422 (2d Cir. 1995)). *See also Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987)(qualified immunity defense applicable if officers of reasonable competence could disagree on whether the probable cause test was met).

In the context of a false arrest claim, qualified immunity attaches when an officer has "arguable probable cause" to arrest. Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d. Cir. 2004) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d. Cir. 1991)); *see also Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.") (citations omitted); *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000). This forgiving standard protects all but

11

the plainly incompetent or those who knowingly violate the law. *Provost v. City of Newburgh,* 262 F.3d 146, 160 (2d Cir. 2001).

Plaintiff will be hard-pressed to argue that Judge Wood's decision in *Safir* qualifies as "settled law" on the issue of when sleeping in a public place qualifies as constitutionally protected expressive conduct under *Clark* – and that would be true even if the decision were not so fact-specific. It does not establish a "settled" principle of law that a police officer is charged with knowing. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). Based on plaintiff's testimony, it was objectively reasonable for police officers to believe that Plaintiff was violating both the ordinance prohibiting camping in city parks and a lawful order to disperse. (50-h at 27, 41-42, 43); *Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir. 2001); *Anderson v. Creighton,* 483 U.S. 635, 641 (1987). Certainly, reasonable officers could differ on the issue. Either way, Officers Murray and Doe appear to have arguable probable cause to arrest and are cloaked with qualified immunity from suit. Indeed, had the City moved for summary judgment instead of moving to dismiss for failure to state a claim, they might well have obtained dismissal of this lawsuit by now.[1]

That goes for Plaintiff's pendent common law claims as well. If Plaintiff's testimony is to be believed, both actual and arguable probable cause exist under state as well as federal law. As to the latter: while the doctrine of qualified immunity is generally understood to only protect government officials from federal, not state, causes of action. *Jenkins v. City of New York,* 478 F.3d 76, 86 (2d Cir. 2007), New York common law fills this gap by providing government officials with similar form of protection against state law claims. *Id.; see Jones v. Parmley,* 465

---

[1] For that reason, this court's individual rules require the municipality to make a "bare" motion to dismiss on the ground of qualified immunity, take the plaintiff's deposition, and then brief the motion. That, unfortunately, is not the course the City chose to follow in this case.

F.3d 46, 63 (2d Cir. 2006). "New York law . . . grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones,* 465 F.3d at 63 (*citing Blouin ex rel. Estate of Pouliot v. Spitzer,* 356 F.3d 348, 364 (2d Cir. 2004), and *Arteaga v. State,* 72 N.Y.2d 212, 216–17 (1988)).

In sum, had the City chosen to make the appropriate motion, Plaintiff's own mouth condemneth him and his lawsuit. However, procedure must be followed; since this motion "must" be converted to a motion for summary judgment, Plaintiff "must" have a reasonable opportunity to submit admissible evidence that would raise a genuine issue of material fact to bar dismissal of his claims. Plaintiff should be aware that he cannot create a genuine issue of fact by submitting an affidavit that contradicts his sworn 50-h testimony. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir. 1991) (citing cases); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 304 (2d Cir. 2000).

Plaintiff has twenty one days to submit whatever evidence he wishes, and to make whatever argument he chooses to make, in a brief of no more than 10 pages, in opposition to the motion for summary judgment. If Plaintiff fails to meet this deadline, or if his evidence does not raise any genuine issue of material fact, the motion will be granted and judgment entered dismissing the case.

Dated: July 15, 2014

U.S.D.J.

BY ECF TO ALL COUNSEL

13